UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
CORNELIO D. MCDONALD,

          Plaintiff,

- against -

UNITED STATES POSTAL SERVICE AGENCY;
and JOHN E. POTTER, Postmaster General,

          Defendants.
----------------------------------------------------------------- x
CORNELIO D. MCDONALD,

          Plaintiff,

- against -

UNITED STATES POSTAL SERVICE AGENCY;
UNITED STATES POSTAL INSPECTION
SERVICE; JOHN E. POTTER, Postmaster
General; DAVID SOLOMON, Vice President
Area Operations; STEVE FORTE, Vice
President Area Operations; LILY JUNG-
BURTON, Queens Triboro District Manager;
WILLIAM ROGERS, Postmaster Flushing
District; DAN O'CONNOR, Area Management
Customer Service Opr.; ROBERT BOTMAN;
SUNNY WONG; GENE DALY; A.J. DIJANI;
JEFF GOLDMAN; WOOK HONG; DOUGLAS
PALMA; ERIC SCHINASI; and MARY QUINLAN,

          Defendants.
----------------------------------------------------------------- x

**MEMORANDUM & ORDER**

08 CV 4937 (RJD) (LB)

09 CV 1044 (RJD) (LB)

DEARIE, District Judge.

      Few facts are uncontested in the recitation of events leading to plaintiff's firing from the United States Postal Service. One thing is clear. There is no evidence that pro se plaintiff Cornelio McDonald was fired due to his age, sex, race, or color. Plaintiff's 18-year career at the

USPS faltered in 2008 when he was suspended after a customer complained that McDonald tried to run him over in his personal vehicle. While suspended, McDonald had a confrontation with a USPS supervisor that ended with the supervisor filing a police report for harassment. McDonald was fired soon after. Plaintiff, who identifies himself as black and Hispanic, sues the USPS under Title VII for unlawful race, sex, and color discrimination.[1] McDonald also sues under the ADEA based on his age, 48, at the time he was fired. Plaintiff moves for summary judgment.[2] Defendants cross-move for summary judgment, arguing that plaintiff neither states a prima facie case of any unlawful discrimination nor submits any admissible evidence to rebut their non-discriminatory reasons for firing him. Although plaintiff identifies numerous facts in dispute—indeed, plaintiff and defendants have competing accounts of each time plaintiff was disciplined—McDonald fails to identify any disputed fact material to his claims of age, sex, race, or color discrimination. To avoid summary judgment, plaintiff must produce evidence on which a rational jury could decide in his favor. Plaintiff fails to do so. For the reasons stated below, the Court denies plaintiff's motion for summary judgment and grants defendants' cross-motion.

Plaintiff began working as a USPS letter carrier in 1989. His disciplinary problems started around 2006. That July, plaintiff received a warning letter for poor conduct after he got into an argument with a supervisor over a customer's complaint regarding delivery of her TV Guide. McDonald challenged the warning letter through the union grievance process and lost. That same month, plaintiff reported to the NYPD that one of his supervisors, Wook Hong, had

---

[1] McDonald also sues a number of his supervisors in their individual capacities. Since individuals are not liable under Title VII, the Court dismisses these claims. Sassaman v. Gamache, 566 F.3d 307, 315-16 (2d Cir. 2009).

[2] Plaintiff's papers summarize his version of events and request "permission to move for a Motion for Summary Judgment in its Entirety." See ECF Docket # 57 (10/14/10). Plaintiff also submitted a five-inch-thick stack of documents in response to defendants' cross-motion for summary judgment. The Court has reviewed all of plaintiff's submissions. Liberally construing McDonald's papers, the Court interprets them as both moving for summary judgment and opposing defendants' cross-motion. In both cases, plaintiff's lack of evidence of discrimination proves fatal.

hit him, leaving bruises. McDonald asserts that no one at the USPS ever disciplined Hong. In March 2007, plaintiff and Hong had a misunderstanding over plaintiff's vacation schedule, and Hong declared McDonald AWOL. Plaintiff's resulting disciplinary letter, imposing a seven-day suspension, was withdrawn through the grievance process.

The following month, plaintiff received another disciplinary letter imposing a 14-day suspension for leaving his mail truck unattended. According to McDonald, two of his supervisors, Douglas Palma and Gene Daly, set plaintiff up by assigning him delivery of an Express Mail package and staking out McDonald's postal truck. After McDonald delivered the package, he left his truck for an exercise break. When plaintiff returned, he alleges, he saw Palma prying open the truck window. Palma then falsely reported McDonald for leaving his mail truck unlocked, unattended, and open. The resulting 14-day suspension letter, which plaintiff also challenged through the grievance process, was downgraded to a warning letter. In May 2007, McDonald filed an EEOC complaint alleging race and color discrimination.[3]

In August 2007, plaintiff had a run-in with a customer that led to his suspension and eventual termination. McDonald was assigned to deliver mail on a foot route. Nonetheless, around mid-day, plaintiff was driving his personal SUV near the Fresh Meadows mall when he almost hit two pedestrians. McDonald alleges that as he turned left, he inadvertently drove near the pedestrians, Chris Santana and Santana's girlfriend. When plaintiff told Santana to watch out, Santana responded, "Fuck you, nigger." (Santana, who admits that he said, "Fuck you," denies uttering any racial slur.) What follows is hotly contested by the parties, but on plaintiff's account, he drove to the mall parking lot to eat lunch, where he again spotted Santana and his girlfriend. McDonald states that Santana and his girlfriend approached him, and he asked them

---

[3] Plaintiff filed at least two prior EEOC complaints against the USPS, in April 2001 and April 2002.

3

why they had called him "nigger." Without giving McDonald a satisfying response, the two turned to walk towards a mall security guard. Plaintiff claims that, in order to tell his version of events and to ask Santana his name, he followed the pair towards the security guard. As plaintiff walked, he dialed 911, but McDonald says that he hung up the call at Santana's request. According to McDonald, the three peacefully parted, and plaintiff continued on his rounds. Later that day, Santana complained to both a USPS hotline and Fresh Meadows supervisors that plaintiff had tried to hit him with his SUV and threatened to fight him, calling Santana "cracker," "fat ass," and making fun of his girlfriend. Santana also filed a report with the NYPD. On August 20, McDonald received an emergency unpaid suspension for "conduct injurious to [himself] and others" and was barred from post office grounds pending investigation into Santana's complaints.

During the investigation, a USPS inspector interviewed Santana and other customers who complained about McDonald. Two construction workers swore in written statements that in July 2007, McDonald had tailgated them in his postal truck, honking and cursing at them. One worker swore that McDonald tried to goad them into fighting, and made an illegal U-turn with his truck in order to drive straight for them.[4] The construction workers' boss, who the USPS inspector also interviewed, stated that plaintiff had stormed into his office, threatening to have the workers arrested by postal police if they did not apologize for harassing him. Plaintiff denies cursing, honking at, or tailing the workers. He also denies threatening their arrest. Other USPS customers also complained about McDonald, and the USPS inspector considered their statements, relayed second-hand during the inspector's interview of Palma. The USPS issued

---

[4] The other construction worker affirmed his partner's written statements, but later recanted part of his testimony during plaintiff's second arbitration hearing. This worker testified that after McDonald swore at them, the worker tried to start a fight, but McDonald refused to leave his postal truck.

4

McDonald a notice of removal on October 11, 2007 for "conduct unbecoming a postal employee." Plaintiff challenged his emergency suspension and removal notice in arbitration, winning the first challenge and losing the latter.

On May 10, 2008, still suspended, McDonald returned to the Fresh Meadows post office to mail two letters to the EEOC. According to McDonald, USPS supervisor Mehdi Djari noticed plaintiff had written to the EEOC and responded by harassing and "hovering" near McDonald. (Djari filed a police report accusing McDonald of harassment for threatening, cursing, and aggressively getting within inches of Djari's face.) On June 4, 2008, the USPS issued plaintiff a second notice of removal for "conduct unbecoming of a postal employee." This notice, primarily based on plaintiff's encounter with Djari, also referenced McDonald's disciplinary history. The USPS fired McDonald, and this suit followed.

The Court may grant summary judgment when the movant shows that there is no genuine dispute over a material fact and he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Although disputes over one party's intent usually preclude summary judgment, a plaintiff cannot rely on "the mere incantation of intent . . . as a talisman to defeat an [employer's] otherwise valid motion." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) (granting summary judgment to employer on Title VII claim). "Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations" to proceed to trial. Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008). To allow otherwise "would necessitate a trial in all Title VII cases." Meiri, 759 F.2d at 998.

To state a prima facie claim under the ADEA or Title VII, plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for his job; (3) he suffered an adverse

5

employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010). Once a plaintiff states a prima facie case, the burden shifts to defendant to give a legitimate, non-discriminatory reason for its action. The plaintiff then loses the presumption of discrimination gained by making a prima facie case, and plaintiff "must then come forward with evidence that the defendant's proffered, non-discriminatory reason is mere pretext for actual discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). A showing of pretext requires the plaintiff to "produce not simply 'some' evidence, but sufficient evidence" that rationally supports the conclusion "that more likely than not [race, color, or sex discrimination] was the real reason" behind defendant's actions. Id. at 43 (internal quotation marks and citation omitted).[5] Title VII retaliation claims are subject to the same burden-shifting analysis. Broich v. Inc. Village of Southampton, 462 F. App'x 39, 44-45 (2d Cir. 2012).

Plaintiff fails to establish a prima facie case. Despite his voluminous submissions, the Court cannot find any evidence that race, sex, age, or color played any part in the events that culminated in McDonald's firing. Even if plaintiff could somehow meet this threshold burden, the record is equally barren on the issue of pretext. If the USPS erred in firing McDonald—and McDonald has not shown that it did—there is no evidence, direct or circumstantial, that plaintiff's age, race, sex, or color played any role. In the face of defendants' ample record— including Santana's and Djari's complaints to the NYPD—McDonald only asserts that Palma had a vendetta against him and that everyone, from the disinterested civilians to his supervisors at Fresh Meadows, is lying. Plaintiff cannot "support a rational finding that the [defendants']

---

[5] For plaintiff's ADEA claim, he must show that his age was the "but-for" cause of defendants' adverse actions. See Gorzynski, 596 F.3d at 106.

6

legitimate, non-discriminatory reasons . . . were false, and that more likely than not discrimination was the real reason" he was fired. Lu v. Chase Invest. Servs. Corp., 412 F. App'x 413, 416 (2d Cir. 2011) (affirming summary judgment for employer) (internal quotation marks and citation omitted). Challenging defendants' honesty is not enough. "[An employer's] reason cannot be proved to be a pretext for <u>discrimination</u> unless it is shown <u>both</u> that the reason was false, <u>and</u> that discrimination was the real reason" for plaintiff's termination. Id. at 416 (emphasis original) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)) (internal quotation marks omitted). McDonald faced two notices of removal, both for serious allegations of threatening and violent behavior. And, the USPS inspector collected sworn statements describing additional discourtesies and threats by McDonald against postal customers. Not only does plaintiff lack any evidence that defendants' reasons were pretextual, "[t]o the contrary, the evidence, taken in the light most favorable to [him], fails to demonstrate that [defendants'] decision . . . was motivated by anything other than sound business practice." Lu, 412 F. App'x at 417 (employer showed plaintiff performed poorly and broke company accounting rules).

As receptive and tolerant as we are to pro se complaints, despite considerable abuse and misunderstanding, there are limits to the Court's hospitality. Saying something is so does not make it so. Even pro se litigants cannot prevail on conclusions and accusations alone: some proof is required.

For the forgoing reasons, the Court denies plaintiff's motion for summary judgment and grants defendants' cross-motion. The Clerk of the Court is ordered to close the case.

SO ORDERED.

Dated: Brooklyn, New York
September 34, 2012

/s/ Judge Raymond J. Dearie

_____
RAYMOND J. DEARIE
United States District Judge